**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; ASIAN LAW CAUCUS; SAN FRANCISCO BAY GUARDIAN, *Plaintiffs-Appellees*, v. FEDERAL BUREAU OF INVESTIGATION, *Defendant-Appellant.* | No. 16-15178 D.C. No. 3:10-cv-03759-RS OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted October 19, 2017
San Francisco, California

Filed February 1, 2018

Before:  Sandra S. Ikuta and Andrew D. Hurwitz, Circuit
Judges, and James S. Gwin,* District Judge.

Opinion by Judge Hurwitz

---

**SUMMARY****

---

**Freedom of Information Act**

The panel vacated the district court's summary judgment
that was entered in favor of the plaintiffs who had submitted
Freedom of Information Act ("FOIA") requests to the
Federal Bureau of Investigation; and remanded for further
proceedings.

Exemption 7 of FOIA governs disclosure of records or
information complied for law enforcement purposes.

The panel held that for generalized records, such as
training manuals and guidelines, the government's burden
under Exemption 7 of demonstrating that withheld materials
were "complied for law enforcement purposes" can be
satisfied without linking the documents to the enforcement
of a particular statute.  The panel further held that the agency
need only establish a rational nexus between the withheld
document and its authorized law enforcement activities.  If
such a showing is made, the district court can then determine
whether disclosure would cause any of the specific harms

---

* The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

identified in Exemptions 7(A)–(F), 5 U.S.C. 552(b)(7)(A)-(F). The panel expressed no opinion as to whether the documents at issue in this case met the Exemption 7 threshold, nor whether those that do are protected from disclosure under Exemption 7(A)-(F). The panel remanded for the district court to make such determinations in the first instance.

## COUNSEL

August E. Flentje (argued) and H. Thomas Byron III, Appellate Staff; Brian Stretch, United States Attorney; Civil Division, United States Department of Justice, San Francisco, California; for Defendant-Appellant.

Angela Elaine Kleine (argued), Jacob P. Ewerdt, and Somnath Raj Chatterjee, Morrison & Foerster LLP, San Francisco, California; Christina Sinha, Asian Americans Advancing Justice – Asian Law Caucus, San Francisco, California; Lynda Lye and Julia Harumi Mass, American Civil Liberties Union Foundation of Northern California Inc., San Francisco, California; for Plaintiffs-Appellees.

**OPINION**

HURWITZ, Circuit Judge:

This case requires us to once again construe Exemption 7 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(7), which governs disclosure of "records or information compiled for law enforcement purposes."

In analyzing FOIA requests to law enforcement agencies for disclosure of investigatory materials, we have long held that the government need only show a "rational nexus" between enforcement of federal law and a withheld document to invoke Exemption 7. *See, e.g.*, *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). But, we have not yet decided whether the same standard governs requests for more generalized records, such as training manuals and guidelines.

We today hold that for such records, the government's burden under Exemption 7 of demonstrating that withheld materials were "compiled for law enforcement purposes" can be satisfied without linking the documents to the enforcement of a particular statute.

**I.**

Concerned about alleged surveillance of Muslim-Americans, the ACLU of Northern California, the Asian Law Caucus, and the San Francisco Bay Guardian (collectively, "the ACLU") submitted two FOIA requests to the FBI in 2010. The first sought disclosure of documents and data about surveillance and infiltration, including records of "[t]raining for FBI agents regarding Islam, Muslim culture, and/or Muslim, Arab, South Asian, or Middle Eastern communities in the United States." The

ACLU also sought records of "FBI investigations and assessments of mosques; Islamic centers; Muslim community centers; members of mosques, Islamic centers or Muslim community centers based on their membership or affiliation with such centers; Muslim leaders; and imams." The second request sought information regarding the FBI's "mapping" of communities and businesses based on race and ethnicity.

After receiving no disclosures, the ACLU filed this suit. The FBI then released over 50,000 full or redacted pages, but withheld 47,794 pages under various FOIA exemptions, agreeing to provide *Vaughn* indexes for a designated sample of the withheld documents.[1] The parties then filed cross-motions for summary judgment, centered on whether the FBI could withhold documents under Exemption 7. The district court held that the FBI had not shown a "'rational nexus' between the enforcement of a federal law, and the documents it claims are exempt from disclosure," and granted summary judgment to the ACLU.

In its summary judgment order, the district court acknowledged that Ninth Circuit cases requiring a nexus between withheld documents and a specific federal law "arose from the withholding of solely investigatory records, and therefore differ meaningfully from the present instance, which also concerns policy and training documents." But, the court found "no indication in the statute or case law . . . permit[ting] the drawing of such distinctions." The district

---

[1] A "*Vaughn* index" identifies each document withheld and the FOIA exemption claimed, and explains how disclosure would damage the interests protected by the claimed exemption. *See Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991); *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

court entered final judgment in favor of the ACLU, and the FBI timely appealed.

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's summary judgment de novo. *Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam).

## II.

"The Freedom of Information Act seeks 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086, 1092 (9th Cir. 2017) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). Accordingly, "the Act requires that federal agencies make records within their possession promptly available to citizens upon request." *Id.* But, "this command is not absolute." *Id.* Rather, because "Congress recognized that . . . transparency may come at the cost of legitimate governmental and privacy interests . . . the Act provides for nine specific exemptions." *Id.*; *see* 5 U.S.C. § 552(b). Exemption 7 protects "records or information compiled for law enforcement purposes" from disclosure, "but only to the extent that the production of such law enforcement records or information" would cause one of six enumerated harms. 5 U.S.C. § 552(b)(7)(A)–(F). Thus, a court must first decide whether a document was "compiled for law enforcement purposes" before turning to whether an enumerated harm exists.

In considering FOIA requests for information collected through investigations of individuals or groups, we have stressed that "[a]n agency which has a clear law enforcement mandate, such as the FBI, need only establish a 'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed," *Church of*

*Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 748 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 990; *see also Rosenfeld*, 57 F.3d at 808, or "a 'rational nexus' between its law enforcement duties" and such documents, *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983); *see also Wiener*, 943 F.2d at 985 (same). For example, in *Binion* we found that withheld documents pertaining to an FBI investigation of a presidential pardon were subject to Exemption 7 because "FBI pardon applicant investigations are authorized by federal regulation and are part of the duties of this law enforcement agency." 695 F. 2d at 1194.[2]

Our precedents rest on the premise that Exemption 7 cannot be used as "pretext" to withhold documents related to "generalized monitoring and information-gathering that are not related to the [agency's] law enforcement duties." *Rosenfeld*, 57 F.3d at 809 (quoting *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 775 (S.D.N.Y. 1979)). Thus, when the government collects information on individuals and groups, Exemption 7 is available only when the investigation has a rational nexus to a law that the agency is authorized to enforce, *see id.* at 810–11 (involving UC

---

[2] The Third and District of Columbia Circuits employ versions of the "rational nexus" test when analyzing FOIA requests for investigatory materials. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 184 (3d Cir. 2007) (per curiam); *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C. Cir. 1982). Other circuits apply a "per se" rule, under which "documents compiled by law enforcement agencies are inherently records compiled for law enforcement purposes within the meaning of Exemption 7." *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1193 (10th Cir. 2011) (citation and internal quotation marks omitted); *see Jones v. FBI*, 41 F.3d 238, 245–46 (6th Cir. 1994); *Williams v. FBI*, 730 F.2d 882, 883–86 (2d Cir. 1984); *Kuehnert v. FBI*, 620 F.2d 662, 666–67 (8th Cir. 1980); *Irons v. Bell*, 596 F.2d 468, 473–76 (1st Cir. 1979). The government does not ask us today to adopt the "per se" test.

Berkeley's "Free Speech Movement" and other individuals); *Church of Scientology*, 611 F.2d at 748–49 (involving the Church of Scientology and founder L. Ron Hubbard), or a rational nexus to law enforcement duties, *see Wiener*, 943 F.2d at 985–86 (involving John Lennon).

In light of these decisions, the district court held that, with respect to investigatory materials, the FBI was required to identify a nexus to federal law that the agency sought to enforce, and that ruling is not at issue on appeal. But, the ACLU sought more here; it also requested documents compiled for general law enforcement purposes and not linked to a particular investigation. The district court held that our precedents also controlled the analysis in this distinct context.

We disagree. "[L]aw enforcement agencies such as the FBI should be accorded special deference in an Exemption 7 determination." *Binion*, 695 F.2d at 1193. Given such deference, the FBI can surely compile documents for law enforcement purposes without a pre-existing nexus to the enforcement of a specific federal law. For example, an FBI policy about when to seek warrants to search religious institutions and how to conduct searches of such locations would plainly be a document compiled for "law enforcement purposes." However, the document would not have a nexus to the enforcement of a particular statute until a search is conducted. It would instead apply to the enforcement of all or many of the statutes the FBI is charged with enforcing and to the FBI's law enforcement duties in general. Exemption 7 applies on its face to "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). It would be anomalous to deny the benefit of the Exemption to documents that plainly meet its facial requirements because, although they apply to the FBI's law enforcement duties,

they are not yet tied to a particular investigation conducted pursuant to a particular federal law.

Nor does FOIA require us to do so.  Although Exemption 7 originally applied only to "investigatory records," a 1986 amendment broadened it to cover "records or information." Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, § 1802(a), 100 Stat.  3207, 3207-48–49.  This amendment was intended to "resolve any doubt that law enforcement manuals and other non-investigatory materials can be withheld under [Exemption 7]."  S. Rep. No. 98-221, at 23 (1983); *see Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) ("[T]he legislative history makes it clear that Congress intended the amended exemption to protect both investigatory and non-investigatory materials, including law enforcement manuals and the like.").  At the same time, Congress amended Exemption 7(E) to allow withholding of "records or information compiled for law enforcement purposes" to the extent production "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).[3] Thus, the statutory scheme plainly contemplates that guidelines and similar general documents will be evaluated

---

[3] The amendment to Exemption 7(E) was "intended to address some confusion created by the D.C. Circuit's en banc holding in *Jordan v. U.S. Dep't. of Justice*, 591 F.2d 753 (D.C. Cir. 1978), denying protection for prosecutorial discretion guidelines under [FOIA Exemption 2]."  S. Rep. No. 98-221, at 25 (1983); *see also Tax Analysts*, 294 F.3d at 79 (quoting 5 U.S.C. § 552(b)(7)(E)) ("Congress also amended Exemption 7(E) to permit withholding of '*guidelines* for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law,' thus giving further indication that the statutory threshold was not limited to records or information addressing only individual violations of the law.").

under Exemption 7(E). Exemption 7(E) perforce comes into play only after the government meets its threshold burden to qualify for Exemption 7. Congress surely would not have specifically protected the type of information described in Exemption 7(E) from disclosure if the Exemption 7 threshold always precluded the government from seeking this protection.

The Supreme Court's opinion in *Milner v. Department of the Navy*, 562 U.S. 562 (2011), supports this conclusion. Before that opinion was issued, we had read FOIA Exemption 2, 5 U.S.C. § 552(b)(2), which protects documents "related solely to the internal personnel rules and practices of an agency," as applying not only to "mundane employment matters" ("Low 2" matters), but also to rules and practices the "disclosure of which 'may risk circumvention of agency regulation'" ("High 2" matters). *Milner v. U.S. Dep't of Navy*, 575 F.3d 959, 963–64 (9th Cir. 2009) (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 369 (1976)). In applying Exemption "High" 2, we had found various guidance and training materials protected from FOIA requests. *See id.* at 961 (ammunition storage information); *Dirksen v. DHHS*, 803 F.2d 1456, 1458–59 (9th Cir. 1986) (internal "Medicare Policy Guidelines"); *Hardy v. ATF*, 631 F.2d 653, 654–55 (9th Cir. 1980) (law enforcement manual "Raids and Searches"). But, the Supreme Court held in *Milner* that Exemption 2 only protects "Low 2" materials. 562 U.S. at 564–65. In so holding, the Court reasoned that it "cannot think of any document eligible for withholding under Exemption 7(E) that the High 2 reading does not capture." *Id.* at 575.

Similarly, it is difficult to imagine non-investigatory documents eligible for withholding under Exemption 7(E) that could pass through the Exemption 7 threshold under the

district court's interpretation. Thus, were we to deny the application of Exemption 7 to generalized law enforcement documents simply because the government could not link them to enforcement of a specific law, the additional protections that Congress provided to those very documents in Exemption 7(E) would be nullified. Indeed, we have implicitly adopted this approach by analyzing documents under Exemption 7(E) without questioning whether they were "compiled for law enforcement purposes." *See Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 777–78 (9th Cir. 2015) (upholding the FBI's withholding of documents containing law enforcement techniques for surveillance and credit searches under Exemption 7(E)); *see also ACLU of N. Cal. v. U.S. Dep't of Justice*, — F.3d — (9th Cir. Jan 18, 2018) (analyzing a FOIA request for law enforcement techniques and guidelines under Exemption 7(E)).

We therefore hold that when a FOIA request seeks guidelines and other generalized documents compiled by a law enforcement agency not related to a particular investigation, the government need not link the document to the enforcement of a particular statute in order to claim the protection of Exemption 7. Rather, the agency need only establish a rational nexus between the withheld document and its authorized law enforcement activities. If such a showing is made, the district court can then determine whether disclosure would cause any of the specific harms identified in Exemptions 7(A)–(F), 5 U.S.C. § 552(b)(7)(A)–(F).

There is no "one-size-fits-all" test for the required demonstration. For example, the FBI could easily meet the threshold Exemption 7 burden for a document that gives guidelines for searches incident to arrest because its general law enforcement duties routinely involve such searches. But

it would be more difficult to prove, and require greater evidence to demonstrate, a nexus between an FBI investigation into a "highly controversial figure in California education" whom the FBI was attempting to have removed from office and "a plausible law enforcement purpose." *Rosenfeld*, 57 F.3d at 809. And, for some records, it may be impossible to prove a rational nexus to valid law enforcement purposes.[4]

This approach is similar to that of the District of Columbia Circuit. When considering investigatory materials, that court requires that an agency invoking Exemption 7 show that the investigatory activity that gave rise to the documents is "related to the enforcement of federal laws" and there is a "rational nexus" between the investigation at issue and the agency's law enforcement duties. *Pratt*, 673 F.2d at 420–21. But, that court did not require such a showing when considering requests for non-investigatory materials, instead holding that IRS "internal agency material relating to guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation" facially meet the Exemption 7 threshold and require further analysis under Exemption 7(E). *Tax Analysts*, 294 F.3d at 78. *See Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 693–94 (D.C. Cir. 2016) (holding reports on the efficacy of polygraph examinations were "compiled for law enforcement purposes"); *Morley v. CIA*, 508 F.3d 1108, 1128–29 (D.C. Cir. 2007) (holding CIA clearance and

---

[4] We consider today the FBI, an agency with a clear law enforcement mandate. *See Church of Scientology*, 611 F.2d at 748. We express no opinion as to the application of Exemption 7 to "mixed" agencies with "both administrative and law enforcement functions." *See id.*

investigatory processes and related law enforcement techniques and procedures exempt under Exemption 7(E)); *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993) (finding manual exempt under Exemption 7(E)).[5]

## III.

We express no opinion as to whether the documents at issue in this case meet the Exemption 7 threshold, nor whether those that do are protected from disclosure under Exemptions 7(A)–(F).  Rather, we remand for the district court to make such determinations in the first instance.

The judgment of the district court is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

---

[5] The Third Circuit has taken a similar approach.  *See Frankenberry v. FBI*, 567 F. App'x 120, 124 (3d Cir. 2014) (holding that records concerning polygraph examination procedures and other law enforcement techniques are protected from disclosure under Exemption 7(E)).