# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 18, 2016          Decided May 20, 2016

No. 14-5039

KATHRYN SACK,
APPELLANT

v.

UNITED STATES DEPARTMENT OF DEFENSE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01754)

*Kelly B. McClanahan* argued the cause and filed the briefs for appellant.

*Peter R. Maier*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney. *Jane M. Lyons*, Assistant U.S. Attorney, entered an appearance.

Before: TATEL, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: The Government charges fees to process FOIA requests. Those fees can be significant – in this case about $900 – and can deter or prevent citizens from making FOIA requests.

By statute, educational institutions are eligible for reduced fees when they make FOIA requests. The Government has long determined that *teachers* who make FOIA requests are eligible for those reduced fees because teachers are part of an educational institution. But at the same time, the Government has determined that *students* who make FOIA requests are not eligible for those reduced fees because they are supposedly not part of an educational institution.

We disagree with the Government's slicing of the term "educational institution." If teachers can qualify for reduced fees, so can students. Students who make FOIA requests to further their coursework or other school-sponsored activities are eligible for reduced fees under FOIA because students, like teachers, are part of an educational institution. The student involved in this case, Kathryn Sack, therefore is eligible for reduced fees for her FOIA requests. We reverse the contrary judgment of the District Court on that question, and affirm in all other respects.

I

While pursuing her Ph.D. in Politics at the University of Virginia, Kathryn Sack submitted FOIA requests to the Department of Defense.[1] Sack sought Department reports about its use of polygraph examinations, as well as related

---

[1] To be precise, Sack submitted the requests to multiple agencies within the Department. For ease of reference, we will refer to the agencies as "the Department."

documents about those examinations. Sack told the Department that she intended to use the requested information for her dissertation on polygraph bias.

Sack asked the Department to categorize her as an educational-institution requester. Under FOIA, government agencies may charge fees for processing FOIA requests. But FOIA limits the fees that an agency may charge for processing FOIA requests made by an educational institution.

For one batch of Sack's requests, the Department of Defense refused to categorize Sack as an educational-institution requester and required her to pay about $900 to conduct the search. For another batch of Sack's requests, the Department conducted a search and reviewed responsive documents, but the Department informed Sack that the documents were exempt from disclosure under FOIA Exemption (7)(E).

Sack filed a lawsuit challenging the Department's handling of those two batches of requests. As to the first, Sack asked to be categorized as an educational-institution requester so that she would have to pay only the reduced fees. As to the other, Sack challenged the Department's withholding of the requested polygraph reports. The District Court granted summary judgment to the Department of Defense. The Court concluded that Sack was not an educational-institution requester entitled to reduced fees. And the Court ruled that the polygraph reports were exempt under FOIA Exemption 7(E).

II

The first question in this case is whether FOIA requests made by students to further their coursework or other

school-sponsored activities are requests made by an "educational institution."

## A

At the outset, we must describe the relevant statutory and regulatory provisions regarding fees for FOIA requests. Buckle up.

FOIA directs agencies to charge "fees applicable to the processing of requests." 5 U.S.C. § 552(a)(4)(A)(i). Fees may include charges for document search, document duplication, and document review.

The category of the FOIA requester determines the kinds of fees that may be charged. FOIA establishes three categories of requesters.

The first category covers commercial requesters. Agencies may charge such commercial requesters "reasonable standard charges for document search, duplication, and review." *Id.* § 552 (a)(4)(A)(ii)(I).

The second category covers noncommercial requests made by educational institutions, noncommercial scientific institutions, and representatives of the news media. Agencies may charge requesters in the second category only for document duplication. *Id.* § 552 (a)(4)(A)(ii)(II).[2]

---

[2] The relevant FOIA provision provides: "[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II).

The third category includes all other requesters. Agencies may charge those requesters for document search and duplication. *Id.* § 552 (a)(4)(A)(ii)(III).

Here, Sack clearly does not fall within the first category. The question is whether Sack falls within the second "educational institution" category, or instead falls within the third "other" category.[3] This question matters because, to reiterate, educational-institution requesters need to pay only the costs for document duplication but not the costs for document search.

FOIA directs agencies to "promulgate regulations" specifying "the schedule of fees applicable to the processing of requests . . . and establishing procedures and guidelines for determining when such fees should be waived or reduced." *Id.* § 552(a)(4)(A)(i). The statute further provides: "Such schedule shall conform to the guidelines which shall be promulgated . . . by the Director of the Office of Management and Budget and which shall provide for a uniform schedule of fees for all agencies." *Id.*[4]

---

[3] In addition to the provisions setting out the requester categories, a separate FOIA provision not at issue in this case directs agencies to waive or reduce otherwise applicable fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). That fee waiver provision is focused not on the nature of the requester but on the nature of the request. *See Cause of Action v. FTC*, 799 F.3d 1108, 1121 (D.C. Cir. 2015).

[4] FOIA requires agencies – including the Department – to conform to OMB's Guidelines pertaining only to *fee schedules*. In other words, the law does not expressly require that agencies adhere to OMB's Guidelines regarding requester categorization. 5 U.S.C.

FOIA does not define the term "educational institution" apart from limiting it to those institutions "whose purpose is scholarly or scientific research." *Id.* § 552(a)(4)(A)(ii)(II). Department of Defense regulations supply a more comprehensive definition: "The term 'educational institution' refers to a pre-school, a public or private elementary or secondary school, an institution of graduate high education, an institution of undergraduate higher education, an institution of professional education, and an institution of vocational education, which operates a program or programs of scholarly research." 32 C.F.R. § 286.28(e)(4).

Consistent with the statute's directive to follow OMB Guidelines, the Department of Defense has derived its definition of "educational institution" from the Office of Management and Budget's Fee Schedule and Guidelines, which define "educational institution" in the same terms. 52 Fed. Reg. 10,012, 10,014 (1987).

But who within the educational institution qualifies for reduced fees when they make a FOIA request? The Department of Defense regulations do not say. But the OMB Guidelines add further detail on that point. The Guidelines state that "agencies should be prepared to evaluate requests on an individual basis when requesters can demonstrate that the request is from an institution that is within the category, that the institution has a program of scholarly research, and that the documents sought are in furtherance of the institution's program of scholarly research and not for a commercial use."

---

§ 552(a)(4)(A)(i). We assume solely for the sake of argument that OMB may establish guidelines for determining a requester's fee category. Even so, those guidelines must be consistent with the statute, the question we explore in Part II. B.

*Id.* The Guidelines also direct agencies to "ensure that it is apparent from the nature of the request that it serves a scholarly research goal of the institution, rather than an individual goal." *Id.*

To help agencies apply what OMB calls the "institutional versus individual test," the Guidelines provide a few examples and make clear that a *teacher* may be eligible for reduced fees: A "request from a professor of geology at a State university for records relating to soil erosion, written on letterhead of the Department of Geology, could be presumed to be from an educational institution." *Id.* By contrast, a "request from the same person for drug information from the Food and Drug Administration in furtherance of a murder mystery he is writing would not be presumed to be an institutional request, regardless of whether it was written on institutional stationary." *Id.*

The OMB Guidelines also speak to *student* requests. The Guidelines purport to say that the "institutional versus individual test" applies to "student requests as well" as teacher requests. *Id.* But the Guidelines then turn around and say that student requests to further coursework do not qualify as educational-institution requests: "A student who makes a request in furtherance of the completion of a course of instruction is carrying out an individual research goal and the request would not qualify . . . ." *Id.* That lone statement in the OMB Guidelines, if consistent with the statute and otherwise binding in this case, would obviously mean that Sack could not qualify as an educational-institution requester. Not surprisingly, in denying Sack's request to be categorized as an educational-institution requester, the Government relied heavily on that OMB Guideline.

B

We now must decide whether FOIA requests made by students to further their coursework or other school-sponsored activities are requests made by an "educational institution." To our surprise, no court of appeals has apparently decided that question in a published opinion.

In common parlance, the term "educational institution" is synonymous with "school." *See National Security Archive v. Department of Defense*, 880 F.2d 1381, 1383 (D.C. Cir. 1989) ("The ordinary meaning of the term 'educational institution' is 'school.'"). According to *Black's Law Dictionary*, an educational institution is a "school, seminary, college, university, or other educational facility, though not necessarily a chartered institution." (10th ed. 2014).

But who within a school is part of the school for FOIA purposes? At first blush, one might think that the term "educational institution" in FOIA includes *neither* teachers nor students, but refers only to the officers of the institution who speak officially for the institution – for example, the president, provost, or dean of a university. But that narrow category would make no sense in the context of FOIA, which contemplates *researchers* at educational institutions seeking information from the Government. Indeed, the statute characterizes an "educational institution" as an institution "whose purpose is scholarly . . . research." 5 U.S.C. § 552(a)(4)(A)(ii)(II). The members of an educational institution likely to submit regular FOIA requests in pursuit of scholarly research are obviously not the president, provost, or dean of an educational institution. Rather, they are the teachers and students at the school.

Not surprisingly, therefore, the Government has long determined that *teachers* at educational institutions may qualify as educational-institution requesters entitled to reduced fees under FOIA. But the Government has distinguished students from teachers and said that *students* who seek documents to further their coursework or other school-sponsored activities do not ordinarily qualify as educational-institution requesters and are not eligible for reduced fees.

We thus must decide whether the statutory term "educational institution" is properly read, as the Government reads it, to include teachers but exclude students from the category of preferred requesters who are eligible for reduced fees. We conclude that the Government's reading is inconsistent with the statute. Indeed, we think the Government's reading makes little sense at all.

Dictionaries generally define "school" to encompass students as well as teachers. *See, e.g.*, *The American Heritage Dictionary of the English Language* (5th ed. 2011) (defining "school" as, among other things, the "student body of an educational institution"). Like teachers, students do research, seek background information for paper topics, gather primary documents, write papers, publish, and contribute to the development and dissemination of knowledge within the school and to the outside world. They do so in order to further their coursework or other school-sponsored activities. Students often seek access to government information to pursue their particular research interests. And students often lack the money (or would be unwilling to spend it) to pay the extra fees that would be required for their FOIA requests if they were denied classification as an educational institution.

It would be a strange reading of this broad and general statutory language – which draws no distinction between teachers and students – to exempt teachers from paying full FOIA fees but to force students with presumably fewer financial means to pay full freight.

To justify excluding students from the category of educational-institution requesters, the Government cites a snippet of legislative history. But the snippet does not support the Government's interpretation. During the legislative debates, Senator Leahy, the sponsor of the bill amending FOIA to limit fees for educational-institution requesters, stated: "A request made by a professor or other member of the professional staff of an educational or noncommercial scientific institution should be presumed to have been made by the institution." 132 Cong. Rec. S14,298 (daily ed. Sept. 30, 1986) (statement of Sen. Patrick Leahy). Pointing to Senator Leahy's statement, the Government seems to seize on what it perceives to be the statement's negative implication: that a request by a student should be presumed *not* to have been made by the educational institution. We do not think that the claimed negative implication follows from Senator Leahy's affirmative statement. The Senator said nothing one way or another about students. And given that students and teachers are essential elements of educational institutions, it seems just as likely, if not more so, that Senator Leahy would have wanted to make reduced fees available for students as well as teachers.

In any event, we must focus foremost on the text of the statute. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 567 (2005). And the text of the statute refers to "educational institutions" without drawing a line between teachers and students.

In defense of its position here, the Government also points to an OMB Guideline. The Guideline states: "A student who makes a request in furtherance of the completion of a course of instruction is carrying out an individual research goal and the request would not qualify" as a request made by an educational institution. 52 Fed. Reg. at 10,014.

But the Government's reliance on the OMB Guideline just begs the question of whether the Guideline itself is consistent with the statute. To begin with, the Government does not claim that the OMB Guideline is entitled to *Chevron* deference, presumably because OMB is not the only agency that administers FOIA. *See, e.g.*, *DeNaples v. Office of the Comptroller of the Currency*, 706 F.3d 481, 487-88 (D.C. Cir. 2013) (citing *Bowen v. American Hospital Association*, 476 U.S. 610, 642 n.30 (1986)); *Proffitt v. Federal Deposit Insurance Corp.*, 200 F.3d 855, 860 (D.C. Cir. 2000).

In our view, OMB's rule for student requests is inconsistent with the statute. FOIA refers broadly to an "educational institution." As we have explained, we see no good basis in the text or context of FOIA to draw a line here between the teachers and students within the educational institution. The Guideline's ipse dixit distinction of students from teachers is entirely unexplained and unpersuasive. The Guideline says that a geology *teacher* seeking information about soil erosion to support her research is entitled to reduced fees. But why not the geology *student* seeking the same information for the same reason? Crickets. We discern no meaningful distinction for purposes of this statute between the geology teacher and the geology student.

We recognize that OMB may (for good reason) want to help fill and replenish the Government's coffers. And OMB therefore may want to extract as much money as possible from

those who make FOIA requests. OMB may also want to discourage further FOIA requests to alleviate the burden on already grossly overburdened FOIA offices in the Executive Branch. But this statute, as we read it, does not empower the Government to pursue fiscal balance or provide relief for the FOIA bureaucracy on the backs of students. The statutory text and context lead us to this simple conclusion: If teachers can qualify for reduced fees, so can students.

To be clear, to qualify for reduced fees as an educational institution, the requester – whether teacher or student – must seek the information in connection with his or her role at the educational institution. In other words, the requester may not seek the information for personal or commercial use. Just as a teacher's ordinary role at an educational institution is to teach, research, and produce scholarly works, a student's role at an educational institution is, at least in part, to pursue coursework or other school-sponsored activities. A request from either a teacher or a student seeking information that would help her write a murder mystery or enhance her personal stock portfolio presumably has no connection to the requester's role at an educational institution and would not justify reduced fees.

With that in mind, a government agency may seek some assurance that the student is submitting the FOIA request to further coursework or other school-sponsored activities. For example, a FOIA request submitted with a copy of a student ID or other reasonable identification of status as an enrolled student in the school – together with a copy of a syllabus, a letter from a professor, or the like – should suffice. To be clear, we do not intend that list as exhaustive. We caution agencies against requiring hard-to-obtain verifications that will have the practical effect of deterring or turning away otherwise valid student FOIA requests.

In sum, Sack was an educational-institution requester entitled to reduced FOIA fees.

III

We turn next to the Exemption 7(E) issue. Citing that exemption, the Department of Defense denied Sack's request for various Department reports about polygraph examinations.

To withhold documents under Exemption 7, the Government must make a threshold showing that the "records or information" were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); s*ee also, e.g.*, *Public Employees for Environmental Responsibility v. U.S. Section, International Boundary and Water Commission, U.S.-Mexico*, 740 F.3d 195, 202 (D.C. Cir. 2014). On top of that, the Government must demonstrate that production of such "records or information" would cause at least one of the specific harms described in the lettered subsections of Exemption 7. Under Exemption 7(E), the Government must demonstrate (i) that the withheld records or information "would disclose techniques and procedures for law enforcement investigations" and (ii) that their disclosure would reasonably "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Blackwell v. FBI*, 646 F.3d 37, 41-42 (D.C. Cir. 2011).

We conclude that the polygraph reports at issue here meet the threshold requirement of FOIA Exemption 7, as well as both subsidiary requirements specific to Exemption 7(E).

*First*, the reports about polygraph use were compiled for law enforcement purposes. Exemption 7 uses the term "law enforcement" to describe "the act of enforcing the law, both civil and criminal." *Public Employees for Environmental*

*Responsibility*, 740 F.3d at 203. Concurring in *Milner*, Justice Alito persuasively explained that the "ordinary understanding of law enforcement includes . . . proactive steps designed to prevent criminal activity and to maintain security." *Milner v. Department of the Navy*, 131 S. Ct. 1259, 1272 (2011) (Alito, J., concurring); *see also Public Employees for Environmental Responsibility*, 740 F.3d at 203. The reports at issue in this case assist law enforcement agencies in taking "proactive steps" to deter illegal activity and ensure national security. As the Government notes, law enforcement agencies use polygraphs to test the credibility of witnesses and criminal defendants. Those agencies also use polygraphs to "screen applicants for security clearances so that they may be deemed suitable for work in critical law enforcement, defense, and intelligence collection roles." Declaration of Alesia Y. Williams, Defense Intelligence Agency, Chief of FOIA Services Section, at Joint Appendix 226. In *Morley v. CIA*, we stated: "Background investigations conducted to assess an applicant's qualification, such as . . . clearance and investigatory processes, inherently relate to law enforcement." 508 F.3d 1108, 1128-29 (D.C. Cir. 2007) (internal quotation marks omitted).

The Government has satisfactorily explained how polygraph examinations serve law enforcement purposes. It has also explained how the reports assessing the efficacy of those examinations and identifying needed fixes likewise serve law enforcement purposes. Put simply, the reports help ensure that law enforcement officers optimally use an important law enforcement tool. The reports were compiled for law enforcement purposes.

*Second*, the reports contain information about techniques and procedures for law enforcement investigations. As the Government points out, the reports detail whether a particular

agency's polygraph procedures and techniques are effective. The reports identify strengths and weaknesses of particular polygraph programs. In describing the effectiveness of polygraph techniques and procedures, the reports necessarily would disclose information about the underlying techniques and procedures themselves, including when the agencies are likely to employ them.

*Third*, release of the requested reports could reasonably risk circumvention of the law. As the Government explained in its *Vaughn* index responding to Sack's request, the reports identify deficiencies in law enforcement agencies' polygraph programs. Their release could enable criminal suspects, employees with ill intentions, and others to subvert polygraph examinations.

Even if some portions of the reports may be exempt under Exemption 7(E), Sack maintains in the alternative that other portions of the reports were "reasonably segregable" and so should have been released. *See* 5 U.S.C. § 552(b). FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Id.* Courts may rely on agency affidavits to determine that documents withheld pursuant to a valid exemption contain no reasonably segregable information. *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).

Here, the District Court concluded that the release of any part of the reports – whether pertaining to the strengths of polygraphs, their weaknesses, or anything else – would create "at least a risk that subversive individuals will be armed with advanced knowledge of the procedures used by the United States to screen applicants for sensitive employment positions and security clearances." *Sack v. Department of Defense*, 6 F.

Supp. 3d 78, 91 (D.D.C. 2013). For that reason, the District Court stated that the reports could be fully withheld. Our case law is not crystal clear on our standard of review of a district court's substantive segregability determination. *Compare Powell v. Bureau of Prisons*, 927 F.2d 1239, 1243 n.9 (D.C. Cir. 1991) (rejecting abuse of discretion standard when reviewing substantive determination of segregability), *with Boyd v. Criminal Division of the Department of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (applying abuse of discretion standard to segregability decision), *and Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002) (perceiving "no error" without establishing standard of review). But regardless of whether our review here is deferential or de novo, we would reach the same result because we agree with the District Court's segregability determination.

IV

One final bit of housekeeping: Before this suit, Sack filed a separate FOIA suit against the CIA, the Department of Defense, and three other agencies. Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the District Court in that case dismissed the claims against all of the non-CIA defendants and stated that Sack would have to refile separate lawsuits against each agency. Sack's case against the CIA then went forward, and she refiled this separate suit against the Department of Defense. Sack now seeks review of the order in the prior case dismissing the non-CIA defendants. Because that order dismissed claims from a case not before us in this appeal, we lack jurisdiction to review the order.

\* \* \*

Sack was eligible for the reduced fees available to educational-institution requesters. We therefore reverse the

judgment of the District Court on the FOIA fees issue. We affirm the judgment of the District Court in all other respects, including the Exemption 7(E) issue.

*So ordered.*