================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 90
In the Matter of Pamela A.
Madeiros,
          Appellant,
          v.
New York State Education
Department et al.,
          Respondents.

          Cynthia E. Neidl, for appellant.
          Jeffrey W. Lang, for respondents.

STEIN, J.:

          The question before us is whether the Freedom of

Information Law exempts from disclosure certain records compiled

by respondent New York State Education Department relating to

municipalities' plans for auditing special education preschool

provider costs.  We hold that the materials at issue, as

- 1 -

redacted, are exempt from disclosure under Public Officers Law §
87 (2) (e) (i).

                                    I.

          The board of every school district is responsible for
providing special education services and programs to preschool-
age children with disabilities (see Education Law §§ 4410 [2];
see generally Education Law § 4401).  Such programs are often
furnished by private providers approved by respondent New York
State Education Department (hereinafter, the Department) (see
Education Law §§ 4401 [2]; 4410 [9]; 8 NYCRR 200.20).  Each
county and New York City (for the counties contained therein) is
charged with the costs of sending resident children to these
special education preschool programs (see Education Law § 4410
[1] [g]; [11] [a]).  The tuition rates charged by such programs
are set by the Department -- based on financial statements
submitted by the provider, as well as State and municipal audits,
which establish, among other things, the costs of administering
such programs -- and municipalities are reimbursed by the State
for a statutory percentage of the costs paid out to providers
(see id. § 4410 [10], [11] [b] [i]; 8 NYCRR 200.9).

          The Office of the State Comptroller conducted a series
of audits of approved preschool special education programs.
These audits revealed widespread fraud and abuse in the reporting
of allowed costs, and ultimately prompted several criminal
prosecutions and professional disciplinary investigations.  As a

result, in 2013, the legislature amended Education Law § 4410 in an attempt to increase fiscal oversight and, specifically, to incentivize municipal audits of such programs. Although municipalities were already authorized to perform audits of programs for which they bore fiscal responsibility, the 2013 amendments further permitted municipalities to recover overpayments and retain all disallowed costs discovered (L 2013, ch 57, § 24 [ii]; see Education Law § 4410 [11] [c] [i], [ii]; 8 NYCRR 200.18). The amendments to section 4410 also required the Department to "provide guidelines on standards and procedures to municipalities and boards, for fiscal audits of [preschool] services or programs" (L 2013, ch 57, § 24 [i]; see Education Law § 4410 [11] [c] [1]). In addition to complying with that statutory mandate, the Department amended its regulations to require municipalities to submit, for approval by the Department, new "detailed audit plan[s] and audit program[s]" consistent with the Department's guidelines prior to undertaking any audits after a specific date (8 NYCRR 200.18 [b] [2], [3]). Once approved, a municipality's audit plan is valid for five years (see id.).

Shortly after the enactment of the statutory and regulatory amendments relating to Education Law § 4410, petitioner Pamela Madeiros submitted a request to the Department pursuant to the Freedom of Information Law (see generally Public Officers Law art 6 [FOIL]), seeking disclosure, as relevant here, of

> "any and all [Education Law § 4410 (11) (c)
> and 8 NYCRR 200.18] audit standards in [the
> Department's] possession, including any audit
> program and audit plan submitted by a
> municipality or school district . . . ,
> whether approved, not approved, disapproved,
> pending or such other status."

The Department denied petitioner's request in its entirety, asserting that the records were exempt from disclosure pursuant to Public Officers Law § 87 (2) (e) because disclosure "would interfere with investigations of compliance with the provisions of the reimbursable cost manual and the preschool special education rate setting system."  Petitioner administratively appealed, and the Department failed to respond within the statutory time frame, thereby constructively denying her appeal (see Public Officers Law § 89 [4] [a]).

Petitioner subsequently commenced the instant CPLR article 78 proceeding, seeking a judgment vacating the denial of her FOIL request and directing the Department to provide her with the records sought.  Petitioner also requested attorneys' fees pursuant to Public Officers Law § 89 (4) (c).

Before answering the petition, the Department released to petitioner 55 pages of documents responsive to her FOIL inquiry.  The documents consisted of the New York City and Onondaga County Audit Plans, the contents of which were partially redacted, certain unredacted Department records relating to the regulatory amendments, and the guidelines promulgated by the Department for fiscal audits of preschool providers undertaken by

municipalities.  After disclosing these documents, the Department answered the petition and sought dismissal of the proceeding, arguing that: petitioner's claim was moot in light of its disclosures; the redactions were permitted under both sections 87 (2) (e) and (g) of the Public Officers Law; and petitioner had failed to demonstrate her entitlement to attorneys' fees.  The Department submitted unredacted copies of the documents to the trial court for in camera review.

Supreme Court granted the petition only to the limited extent of requiring the Department to disclose two previously redacted pages due to the Department's failure to invoke Public Officers Law § 87 (g) as a basis for its administrative denial, upheld the remainder of the redactions, and otherwise dismissed the proceeding.  Supreme Court reasoned that the majority of the Department's redactions were appropriate under Public Officers Law § 87 (2) (e) because the audit plans contained non-routine audit techniques and procedures compiled for law enforcement purposes, and disclosure would interfere with law enforcement investigations (see Public Officers Law § 87 [2] [e] [i], [iv]).  Supreme Court did not award petitioner attorneys' fees.  On petitioner's appeal, the Appellate Division affirmed (133 AD3d 962 [3d Dept 2015]),[1] and we granted petitioner leave to appeal

_____

[1] During the pendency of petitioner's appeal, New York City released to petitioner an unredacted copy of its audit plan and program.  Thus, insofar as petitioner sought disclosure of that plan, her request for that specific relief with regard to those

(27 NY3d 903 [2016]).

                              II.

          FOIL generally "requires government agencies to 'make available for public inspection and copying all records' subject to a number of exemptions" (Matter of Harbatkin v New York City Dept. of Records & Info. Servs., 19 NY3d 373, 379 [2012]; quoting Public Officers Law § 87 [2]).  FOIL is based on a presumption of access in accordance with the underlying "premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government" (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]; see Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]).  The exemptions set forth in the statute are interpreted narrowly in order to effect the purpose of the statutory scheme (see Matter of Data Tree, 9 NY3d at 462).

          This appeal centers on the meaning and interpretation of the exemption embodied in Public Officers Law § 87 (2) (e).  Pursuant to this provision, an agency may deny public access to records or portions thereof that, as relevant here, "are compiled for law enforcement purposes and which, if disclosed, would" either "interfere with law enforcement investigations or judicial proceedings" (subdivision [i]) or "reveal criminal investigative techniques or procedures, except routine techniques and

─────────────────────

particular documents is rendered academic (see Matter of Fappiano v New York City Police Dept., 95 NY2d 738, 749 [2001]).

procedures" (subdivision [iv]).  Petitioner argues that the courts below erred in concluding that the Department's redactions of the documents responsive to her FOIL request are exempt pursuant to either of these provisions.  More specifically, petitioner asserts that any records relating to municipal audit plans were not compiled for law enforcement purposes, do not relate to and would not interfere with a law enforcement investigation or judicial proceeding, and are not criminal investigative techniques.  Petitioner further contends that she is entitled to attorneys' fees because she has substantially prevailed in this proceeding given the Department's belated disclosures following its commencement.  In response, the Department urges us to affirm the Appellate Division order under either subdivision (i) or (iv) of section 87 (2) (e), and disputes petitioner's claim that she is entitled to attorneys' fees.

III.

Initially, we reject the Department's reliance on Public Officers Law § 87 (2) (e) (iv) -- pertaining to non-routine criminal investigative techniques -- because the Department failed to invoke that particular exemption in its denial of petitioner's FOIL request.  "[J]udicial review of an administrative determination is limited to the grounds invoked by the agency" and "the court is powerless to affirm the administrative action by substituting what it considers to be a

more adequate or proper basis" (<u>Matter of Scherbyn v Wayne-Finger</u>
<u>Lakes Bd. of Coop. Educ. Servs.</u>, 77 NY2d 753, 758 [1991]
[internal quotation marks and citations omitted]; <u>see</u> <u>Matter of</u>
<u>National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the</u>
<u>State of N.Y.</u>, 16 NY3d 360, 368 [2011]; <u>Matter of Scanlan v</u>
<u>Buffalo Pub. School Sys.</u>, 90 NY2d 662, 678 [1997]).  It is also
settled that the "agency relying on the applicability of [a FOIL]
exemption[], . . . ha[s] the burden of establishing that the
. . . documents qualif[y]" for the exemption and, to meet that
burden, the agency must "'articulate particularized and specific
justification'" for denying disclosure (<u>Matter of West Harlem</u>
<u>Bus. Group v Empire State Dev. Corp.</u>, 13 NY3d 882, 885 [2009],
quoting <u>Matter of Fink</u>, 47 NY2d at 571; <u>see</u> Public Officers Law §
89 [4] [b]).

Here, the Department's administrative denial cited to
Public Officers Law § 87 (2) (e), without referencing a specific
subdivision.  However, the justification offered -- namely, that
disclosure would "interfere with investigations of compliance" --
plainly tracks the language of subdivision (i), not subdivision
(iv).  The Department did not make any contemporaneous claim that
the requested materials constituted non-routine "criminal
investigative techniques" (Public Officers Law § 87 [2] [e]
[iv]).  Because the Department did not rely on subdivision (iv)
in its administrative denial, to allow it do so now would be
contrary to our precedent, as well as to the spirit and purpose

of FOIL.

                              IV.

          The propriety of the Department's redactions of the
disclosed records, therefore, turns on whether the redacted
portions qualify for exemption under Public Officers Law § 87 (2)
(e) (i).  This requires us to address both prongs of the
exemption: (1) whether the records were compiled for law
enforcement purposes; and (2) whether disclosure of the records
would interfere with law enforcement investigations or judicial
proceedings.  We conclude that, under the circumstances presented
here, both of these prongs are satisfied and the records were
properly redacted.

          As to the first prong, we are persuaded that the
records at issue were compiled for law enforcement purposes.  The
phrase "law enforcement purposes" is not defined in the FOIL
statutes (see Public Officers Law § 86 [definitions]).  "In the
absence of a statutory definition, 'we construe words of ordinary
import with their usual and commonly understood meaning, and in
that connection have regarded dictionary definitions as useful
guideposts in determining the meaning of a word or phrase'"
(Yaniveth R. v LTD Realty Co., 27 NY3d 186, 192 [2016], quoting
Rosner v Metropolitan Prop. & Liab. Ins. Co., 96 NY2d 475,
479-480 [2001]).  To that end, "law enforcement" is generally
defined by Black's Law Dictionary as "[t]he detection and
punishment of violations of the law" (Black's Law Dictionary

[10th ed 2014], law enforcement).  It is undisputed that the Department lacks jurisdiction to punish criminal violations of the law.  However, as the dictionary further provides, the term "law enforcement" is "not limited to the enforcement of criminal laws" (Black's Law Dictionary [10th ed 2014], law enforcement).

Consistent with this definition, we conclude that the exemption set forth in Public Officers Law § 87 (2) (e) does not apply solely to records compiled for law enforcement purposes in connection with criminal investigations and punishment of violations of the criminal law.  Notably, the exemptions provided in two of the subdivisions under section 87 (2) (e) expressly apply only to "criminal" matters, a limitation that would be superfluous if the term "law enforcement" was confined to criminal matters at the outset (Public Officers Law § 87 [2] [e] [iii], [iv]).

In addition, we have recognized that "'[f]ederal case law and legislative history . . . are instructive'" when interpreting Public Officers Law § 87 (2) (e) because the FOIL law enforcement exemption is modeled on the federal counterpart found in the Freedom of Information Act (Matter of Lesher v Hynes, 19 NY3d 57, 64, quoting Matter of Fink, 47 NY2d at 572 n; see generally 5 USC § 552 [FOIA]).  Significantly in that regard, the federal analogue exempting certain materials compiled for law enforcement purposes has been held to encompass both civil and criminal law enforcement matters (see e.g. Sack v U.S. Dept. of

Defense, 823 F3d 687, 694 [DC Cir 2016]; Cooper Cameron Corp. v U.S. Dept. of Labor, Occupational Safety and Health Admin., 280 F3d 539, 545 [5th Cir 2002]; Tax Analysts v I.R.S., 294 F3d 71, 77 [DC Cir 2002]; Rugiero v U.S. Dept. of Justice, 257 F3d 534, 550 [6th Cir 2001]; see also Milner v Department of Navy, 562 US 562, 582 [2011] [Alito, J. concurring] ["The ordinary understanding of law enforcement includes not just the investigation and prosecution of offenses that have already been committed, but also proactive steps designed to prevent criminal activity"]).  The Committee on Open Government -- which issues advisory opinions relating to FOIL obligations -- has also recognized that "entities other than criminal law enforcement agencies may in certain circumstances cite [Public Officers Law] § 87 (2) (e) as a basis for denial," providing, as an example, an agency audit that uncovers possible illegality (Comm on Open Govt FOIL-AO-7332 [1992]).

        Our decision should not be read to hold that every audit necessarily serves "law enforcement purposes" (Public Officers Law § [2] [e]).  The audits at issue here, however, are not simply routine fiscal audits.  The statutory scheme of Education Law § 4410, as amended in 2013, and the Department's regulations pertaining to municipal audit plans and audit programs, indicate that these audits are specifically targeted at ferreting out the improper and potentially illegal or fraudulent reporting of costs by preschool special education providers.  The

goal of the statutory and regulatory scheme and, in particular
the 2013 amendments, is not only to ensure the establishment of
an accurate tuition rate, but also to encourage compliance with
the applicable reporting rules and curb existing fraud and abuse
(see generally Senate Introducer's Mem in Support, Bill Jacket, L
2013, ch 545 at 9).  Thus, the obvious inference arising from the
statutory requirement that the Department issue guidelines for
municipalities in conducting these audits, is that the
legislature sought to increase the efficacy of audit procedures
in an effort to strengthen enforcement measures.  Under these
circumstances, we conclude that the records sought by petitioner
were compiled for law enforcement purposes.

        Turning to the second inquiry, we agree with the courts
below that the redactions made by the Department were necessary
to prevent interference with a law enforcement investigation (see
Public Officers Law § 87 [2] [e] [i]).  We have cautioned that
"the purpose of [FOIL] is not to enable persons to use agency
records to frustrate pending or threatened investigations nor to
use that information to construct a defense to impede a
prosecution" (Matter of Fink, 47 NY2d at 572).  Here, the
Executive Coordinator for Special Education explained that the
Department's redactions were imperative because releasing
specific methods and procedures used by auditors in particular
counties would supply providers subject to audit with "a roadmap
to avoid disclosure of inappropriate costs" and would enable such

providers to more effectively conceal fraudulent and criminal activities, thereby undermining the audit process. In other words, "disclosure of th[e redacted] procedures would give rise to a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel" (Matter of Fink, 47 NY2d at 572).

To the extent petitioner claims that Public Officers Law § 87 (2) (e) (i) is inapplicable because there were no ongoing audits at the time that she submitted her FOIL request, her argument is unpersuasive. While an agency may not rely on section 87 (2) (e) (i) to refuse disclosure of records upon a wholly speculative claim of potential interference with an unspecified future investigation to which the documents may or may not be relevant (see Church of Scientology of N.Y. v State of New York, 61 AD2d 942, 943 [1st Dept 1978], affd on other grounds 46 NY2d 906, 907 [1979]), that is not the case here. Rather, the municipal audits of special education preschool providers were expressly encouraged by statute and were plainly contemplated in the near future.

A municipality must submit an audit plan for approval as the necessary first step to conducting an audit (see 8 NYCRR 200.18). That is, the very purpose of a municipality's submission of an audit plan to the Department for approval is to obtain authorization to conduct such investigations. We have

previously recognized that section 87 (2) (e) (i) applies to prospective investigations (see Matter of Lesher, 19 NY3d at 68 [observing that disclosure may be required where there was "no longer any pending or potential law enforcement investigation" (emphasis added)]; see also Sussman v U.S. Marshals Serv., 494 F3d 1106, 1114 [DC Cir 2007] [under FOIA, the interference need not be with an ongoing investigation, as disclosure may be refused if it would interfere with a reasonably anticipated proceeding]; Lynch v Dept. of Treasury, 210 F3d 384 [9th Cir 2000] [FOIA exemption applied where legal action was "'contemplated' or 'in prospect'"], cert denied 530 US 1215 [2000]; Manna v U.S. Dept. of Justice, 51 F3d 1158, 1164 [3d Cir 1995] [under FOIA, the agency must show that an enforcement proceeding is "pending or prospective"], cert denied 516 US 975 [1995]; Miller v U.S. Dept. of Agric., 13 F3d 260, 263 [8th Cir 1993] [same]).

Here, considering the municipalities' submissions of audit plans in the context of the statutory and regulatory amendments aiming to uncover and curtail fraudulent and criminal reporting, the existence of reasonably anticipated investigations at the time of petitioner's FOIL request is clear.  The municipalities in question, by virtue of having submitted plans pursuant to which audits could be conducted, were plainly contemplating impending audits of preschool program providers for which they bore financial responsibility.  Thus, the redactions

at issue fit squarely within the exemption permitting an agency to deny access to records compiled for law enforcement purposes where their disclosure would interfere with an investigation.

V.

As a final matter, we agree with petitioner that, even accepting the Department's redactions as proper, she "substantially prevailed" in this litigation (Public Officers Law § 89 [4] [c]).  The Public Officers Law authorizes an award of attorneys' fees where the petitioner "has substantially prevailed" in the FOIL proceeding and the agency either lacked a reasonable basis for denying access to the requested records or "failed to respond to a request or appeal within the statutory time" (Public Officers Law § 89 [4] [c] [i], [ii]).  "Where . . . a court determines that one of the requirements has not been met, we review whether the court erred as a matter of law in reaching that conclusion" (Matter of Beechwood Restorative Care Ctr. v Signor, 5 NY3d 435, 441 [2005]; see Matter of Niagara Envtl. Action v City of Niagara Falls, 63 NY2d 651, 652 [1984]).  If the statutory requirements have been satisfied, the determination of whether to award fees rests within the court's discretion, subject to review only for an abuse of that discretion (see Matter of Capital Newspapers Div. of the Hearst Corp. v City of Albany, 15 NY3d 759, 761 [2010]; Matter of Beechwood Restorative Care Ctr., 5 NY3d at 441; Governor's Approval Mem, Bill Jacket, L 1982, ch 73 at 8).

Here, the Appellate Division concluded that the statutory requirement that petitioner "substantially prevail" was not met because the "majority of the [Department's] challenged redactions were appropriate" (133 AD3d at 965). However, this analysis fails to take into account that the Department made no disclosures, redacted or otherwise, prior to petitioner's commencement of this CPLR article 78 proceeding. Although the Department's redactions in the eventually-released records have been upheld, petitioner's legal action ultimately succeeded in obtaining substantial unredacted post-commencement disclosure responsive to her FOIL request -- including both disclosure that was volunteered by the agency and disclosure that was compelled by Supreme Court's order.

Under these circumstances, petitioner substantially prevailed within the meaning of Public Officers Law § 89 (4) (c) and the Appellate Division erred in determining that petitioner failed to meet the statutory prerequisites for an award of attorneys' fees. Indeed, to conclude otherwise would be to permit agencies to circumvent section 89 (4) (c) because "only a petitioner who fully litigated a matter to a successful conclusion could ever expect an award of counsel fees and a respondent whose position was meritless need never be concerned about the possible imposition of such an award so long as they ultimately settled a matter -- however dilatorily" (Matter of New York Civ. Liberties Union v City of Saratoga Springs, 87 AD3d

336, 339-340 [3d Dept 2011]; see Matter of Kohler-Hausmann v New York City Police Dept., 133 AD3d 437, 438 [1st Dept 2015]; Matter of Jaronczyk v Mangano, 121 AD3d 995, 997 [2d Dept 2014]; Matter of Purcell v Jefferson County Dist. Attorney, 77 AD3d 1328, 1329 [4th Dept 2010]; Matter of Powhida v City of Albany, 147 AD2d 236, 239 [3d Dept 1989]).  We, therefore, must remit for Supreme Court to exercise its discretion in relation to petitioner's fee request.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting the matter to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order modified, without costs, by remitting to  Supreme Court, Albany County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.  Opinion by Judge Stein.  Chief Judge DiFiore and Judges Rivera, Fahey, Garcia, Wilson and Feinman concur.

Decided October 17, 2017