**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, *Plaintiff-Appellee*, v. UNITED STATES DEPARTMENT OF JUSTICE, *Defendant-Appellant.* | No. 14-17339 D.C. No. 3:12-cv-04008-MEJ OPINION |

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted December 12, 2016
San Francisco, California

Filed January 18, 2018

Before: Michael Daly Hawkins, Marsha S. Berzon,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Freedom of Information Act

The panel affirmed in part, and reversed in part, the district court's order that the United States Department of Justice ("DOJ") produce two documents contained within the USABook, an internal DOJ resource manual for federal prosecutors, in response to the American Civil Liberties Union of Northern California's Freedom of Information Act ("FOIA") request.

The requested documents related to DOJ's use of electronic surveillance and tracking devices in criminal investigations. DOJ maintained that the USABook sections were exempt from production under FOIA because they were attorney work product, and, alternatively, because they described law enforcement techniques and procedures.

The panel held that only the limited portions of the USABook documents that present original legal analyses, not purely descriptive and not already incorporated in public documents, to guide federal prosecutors in litigation were properly withheld as attorney work product under FOIA Exemption 5. The panel also held that the withheld documents in this case did not provide details or means of deploying law enforcement techniques that would bring them under FOIA Exemption 7(E). The panel remanded to the district court to determine which portions of the documents

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

may be segregated under Exemption 5 and which must be disclosed.

## COUNSEL

H. Thomas Byron III (argued) and Leonard Schaitman, Appellate Staff; Melinda Haag, United States Attorney; United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

Linda Lye (argued) and Michael T. Risher, American Civil Liberties Union Foundation of Northern California Inc., San Francisco, California, for Plaintiff-Appellee.

## OPINION

BERZON, Circuit Judge:

The United States Department of Justice (DOJ) appeals the district court's order that it produce two documents contained within the USABook, an internal DOJ resource manual for federal prosecutors, in response to the American Civil Liberties Union of Northern California's (ACLU-NC) Freedom of Information Act (FOIA or "the Act") request. The documents relate to DOJ's use of electronic surveillance and tracking devices in criminal investigations. DOJ maintains that the USABook sections are exempt from production under FOIA because they are attorney work product, and, alternatively, because they describe law enforcement techniques and procedures. We hold that only the limited portions of the USABook documents that present original legal analyses, not purely descriptive and not already

incorporated in public documents, to guide federal prosecutors in litigation were properly withheld as attorney work product under FOIA Exemption 5. We also hold that the withheld documents in this case do not provide details or means of deploying law enforcement techniques that would bring them under FOIA Exemption 7(E). We remand to the district court to determine which portions of the documents may be segregated under Exemption 5 and which must be disclosed.

## I. Background

ACLU-NC, a civil rights group and local affiliate of the national ACLU, submitted a request for records under FOIA, 5 U.S.C. § 552, to the U.S. Attorney's Office for the Northern District of California.[1] The request sought information regarding the U.S. Attorney's Office's practices regarding obtaining location information from electronic devices for tracking and surveillance purposes. The ACLU-NC request was part of a national ACLU campaign to shed light on the federal government's use of various surveillance technologies in criminal investigations. ACLU-NC also sought to assess whether the government's law enforcement practices in this regard comport with constitutional protections, especially in light of the Supreme Court's decision in *United States v.*

---

[1] ACLU-NC submitted its FOIA request in conjunction with the San Francisco Bay Guardian, an independent newspaper, and the Bay Guardian was a party to this suit as initially filed. After the case was appealed, the parties jointly moved to dismiss the Bay Guardian as a party because the entity no longer publishes a newspaper or otherwise disseminates information to the public. The district court granted that order, and we then dismissed the San Francisco Bay Guardian from this appeal. For simplicity, we refer only to the ACLU-NC as the requestor and plaintiff in this litigation.

*Jones*, 565 U.S. 400 (2012). *Jones* held that installing a Global Positioning System (GPS) device on a suspect's vehicle and using that device for sustained location monitoring constitutes a Fourth Amendment search.

In its FOIA request, ACLU-NC sought to obtain from the U.S. Attorney's Office for the Northern District of California, in relevant part,

> (1) Any template applications or orders that have been utilized by United States Attorneys in the Northern District to seek or acquire location information since January 1, 2008.

> (2) Any documents since January 1, 2008, related to the use or policies of utilizing any location tracking technology, including but not limited to cell-site simulators or digital analyzers such as devices known as Stingray, Triggerfish, AmberJack, KingFish or Loggerhead.[2]

> (3) Any records related to the Supreme Court's holding in *United States v. Jones*, excluding pleadings or court opinions filed in

---

[2] Cell-site simulators are "devices that masquerade as a legitimate cell phone tower, tricking phones nearby into connecting to the device in order to log the [identifying] numbers of mobile phones in the area or capture the content of communications." *See* Electronic Frontier Foundation, *Cell-Site Simulators: Frequently Asked Questions*, https://www.eff.org/sls/tech/cell-site-simulators/faq (last visited Aug. 31, 2017).

the matter in the Supreme Court or courts below.[3]

ACLU-NC asked for expedited processing of its information request pursuant to 5 U.S.C. § 552(a)(6)(E),[4] citing a "widespread media interest in government surveillance methods using new technology to collect detailed, sensitive, personal information" and an "urgency to inform the public about the scope of the government's practices because of pending legislation on these very issues."

Shortly after submitting the FOIA request, ACLU-NC received a notice from the U.S. Attorney's Office for the Northern District of California stating that the request had been forwarded to DOJ; DOJ processes all FOIA requests received by U.S. Attorney's Offices. Soon thereafter, the Executive Office for United States Attorneys (EOUSA or "the Office"), a department within DOJ, in turn

---

[3] The FOIA request included a fourth portion, which the district court bifurcated for summary judgment purposes because it raised distinct factual and legal questions. Despite this bifurcation, we have jurisdiction over the government's appeal of the district court's grant of partial summary judgment regarding part of the FOIA request. A "'final decision' in a FOIA case [is] 'an order by the District Court requiring release of documents by the Government to the plaintiff, or order denying the plaintiff's right to such release.'" *In re Steele*, 799 F.2d 461, 464 (9th Cir. 1986) (quoting *Green v. Dep't of Commerce*, 618 F.2d 836, 841 (D.C. Cir. 1980)). "[A]n order compelling disclosure is [therefore] appealable as a final decision under [28 U.S.C.] § 1291." *Id.*

[4] Section 552(a)(6)(E)(i) provides: "Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for the expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency."

acknowledged receipt of the request and informed ACLU-NC that it would expedite processing.

Several months passed during which ACLU-NC received no further communication from DOJ regarding its request. After inquiring about the status of the request and receiving no response, ACLU-NC commenced this action.

The complaint alleged that DOJ had wrongfully withheld agency records under FOIA and requested that the court order DOJ to process its request for information expeditiously. DOJ admitted in its answer that it had not produced any documents or otherwise responded to the FOIA request.

The parties then conferred extensively regarding the processing of the document request. Their discussions resulted in a stipulation clarifying, with respect to the portions of the request relevant here, (1) the scope of the request, and (2) the procedures DOJ would follow to identify responsive documents in the possession of the U.S. Attorney's Office for the Northern District of California.

EOUSA completed a search for responsive documents within a few months, in accordance with the stipulation. The Office identified potentially responsive records authored by that division. It also flagged other potentially responsive records authored and maintained by DOJ's Criminal Division and referred those records to that division for it to make a decision regarding disclosure. The two DOJ Divisions then separately released to ACLU-NC some responsive documents and withheld others, claiming statutory exemptions for the withheld documents. EOUSA released 41 pages in full and withheld 18 pages in full. The Criminal Division released 2 pages in full, 3 pages in part, and withheld 530 pages.

DOJ then filed a motion for partial summary judgment, arguing that the withheld documents were subject to FOIA Exemptions 5 and 7(E).[5] In support of its motion, DOJ filed declarations by John Kornmeier, an attorney advisor with EOUSA, and John E. Cunningham III, a trial attorney with the FOIA/Privacy Act Unit of the Office of Enforcement Operations in DOJ's Criminal Division. The declarations explained each division's rationales for withholding certain records. Along with the declarations, the DOJ Divisions each produced a *Vaughn* index[6] describing briefly the format and content of the withheld records and the justifications for withholding.

The DOJ declarations and *Vaughn* indices reveal that the agency withheld portions of seven distinct documents. EOUSA withheld a document containing template applications and orders for the use of pen registers and trap and trace devices, as well as select slides from a PowerPoint presentation containing DOJ's interpretations of the law governing the use of location tracking devices. EOUSA

---

[5] This motion and the ACLU-NC's cross-motion were partial because they related only to three of the four parts of the FOIA request, one part having been scheduled for separate summary judgment briefing. *See* note 3, *supra*.

[6] "A '*Vaughn* index' is a document supplied by government agencies to opposing parties and the court [in FOIA litigation] that identifies 'each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption,' and the index is designed to provide reasoning against which the requester can offer effective advocacy and a basis for the court to reach a reasoned decision." *Hamdan v. U.S. Dep't. of Justice*, 797 F.3d 759, 769 n.4 (9th Cir. 2015) (quoting *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991)); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

maintained both documents were properly withheld under FOIA Exemption 5, which exempts attorney work product from disclosure.

The Criminal Division withheld three legal memoranda analyzing the implications of two relevant cases—*United States v. Jones*, 565 U.S. 400 (2012), and *In re Application*, 534 F. Supp. 2d 585 (W.D. Pa. 2008)—on the agency's use of GPS tracking and other investigative techniques. The three memoranda additionally provided guidance on the making of requests for historical cellular telephone location information.

The Criminal Division also withheld two sections of the USABook that were responsive to ACLU-NC's FOIA request. The USABook is an internal DOJ resource manual for federal prosecutors found on DOJ's intranet site. As Cunningham explained, the "USABook functions as a legal resource book or reference guide for federal prosecutors." Among many other matters, the USABook addresses the use of electronic surveillance and tracking devices. The two pertinent sections of the USABook DOJ withheld were: (1) The "Tracking Devices Manual," which consists of both a narrative section and an appendix containing sample affidavits, warrants, and court orders regarding authorization to obtain cellular phone location data, and (2) a chapter of the Federal Narcotics Manual titled "Electronic Surveillance-Non-Wiretap." The Criminal Division maintained that these two pertinent but withheld sections of the USABook are shielded from disclosure by FOIA Exemption 5 because they are attorney work product, and, alternatively, by FOIA Exemption 7(E), which protects records compiled for law enforcement purposes that reveal investigative techniques and procedures. ACLU-NC filed a cross-motion for partial

summary judgment, arguing the claimed FOIA exemptions did not apply.

Based on the agency declarations and the *Vaughn* index, the district court granted in part and denied in part both the ACLU-NC's and DOJ's partial motions for summary judgment.  The district court ordered DOJ to release the template applications and orders for use of pen registers and trap and trace devices withheld by EOUSA and the two sections of the USABook withheld by the Criminal Division. These records functioned like agency manuals, the district court concluded, providing general guidance on obtaining location tracking information and not anticipating any specific case, and so were improperly withheld under Exemption 5.  The district court also held the withheld sections of the USABook are not protected by Exemption 7(E), because the documents describe in general terms publicly known surveillance techniques.

Conversely, the district court granted DOJ's motion for summary judgment with respect to (1) the EOUSA PowerPoint presentation slides on legal issues arising from the use of location tracking devices; and (2) the three Criminal Division legal memoranda analyzing the implications of recent case law regarding GPS location tracking.  These documents were determined to be attorney work product protected by Exemption 5, because they provide legal theories and strategies for use in criminal prosecutions.

In compliance with the district court's order, DOJ produced the EOUSA template applications for pen registers and trap and trace devices, and also handed over the USABook appendix containing sample affidavits, warrants,

and orders. DOJ appealed, however, the district court's order with respect to the two narrative sections of the USABook, the Tracking Devices Manual, and the chapter of the Narcotics Manual on electronic surveillance. After oral argument, we reviewed the two narrative sections *in camera*.

## II. Discussion

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks and citation omitted). The Act "is premised on the theory that in order for democracy to function properly, citizens must have access to government information, particularly where access might be 'needed to check against corruption and to hold the governors accountable to the governed.'" *Pac. Fisheries Inc. v. United States*, 539 F.3d 1143, 1147 (9th Cir. 2008) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). To that end, FOIA " attempts to create a judicially enforceable public right to secure [official] information from possibly unwilling official hands." *Rose*, 425 U.S. at 361 (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)). Implementing that right, FOIA mandates that government agencies make their internal records available to the public, subject to nine enumerated exemptions. *See* 5 U.S.C. § 552(a)–(b).

FOIA's enumerated exemptions reflect a recognition that "legitimate governmental and private interests could be harmed by release of certain types of information." *John Doe Agency*, 493 U.S. at 152 (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)). At the same time, FOIA's "exemptions do not obscure the basic policy that disclosure, not secrecy, is the

dominant objective of the Act." *Rose*, 425 U.S. at 361. Consistent with this objective, the only exemptions are the ones listed in the statute, and they are to be narrowly construed. *Id.* Moreover, the government has the burden of justifying withholding under any of FOIA's exemptions. *Hamdan*, 797 F.3d at 772.

DOJ maintains it properly withheld the two sections of the USABook because they fall within the ambit of two of FOIA's statutory exemptions, Exemptions 5 and 7(E). We address each exemption in turn.

A.

i.

Exemption 5 of FOIA authorizes the government to withhold from release, as relevant here, "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 encompasses records "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). These include records that would be protected in litigation by the attorney work-product, attorney-client, and deliberative process privileges. *See id.* at 150–54. DOJ maintains that the withheld portions of the USABook are attorney work product.

The attorney work-product privilege protects from discovery in litigation "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). The privilege was first recognized in

*Hickman v. Taylor*, 329 U.S. 495 (1947), and is codified in Federal Rule of Civil Procedure 26(b)(3).[7]

As *Hickman* recognized, shielding from discovery materials prepared "with an eye toward the anticipated litigation" protects the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely and without reservation. 329 U.S. at 498, 510–11. The privilege ensures that litigants cannot proceed "on wits borrowed from the adversary," *id*. at 516 (Jackson, J., concurring), and "prevent[s] exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (quoting *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

"To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004)).[8] We apply this general

---

[7] The attorney work-product privilege also applies in criminal proceedings. *United States v. Nobles*, 422 U.S. 225, 236 (1975). The Federal Rules of Criminal Procedure protect government documents more broadly, providing that the rules "do[] not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

[8] The attorney work-product privilege is a qualified privilege. A party seeking discovery can overcome the privilege by showing that she "has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P.

rule to each type of information contained in the withheld USABook sections in turn.

As explained above, the DOJ Criminal Division withheld two portions of the USABook: a section of the Tracking Devices Manual and a chapter of the Federal Narcotics Manual entitled "Electronic Surveillance- Non-Wiretap." The Criminal Division's *Vaughn* index describes the content of the Tracking Devices Manual as follows: "Provides guidance to federal prosecutors/case agents re[garding] electronic surveillance and tracking devices. Text covers the following: Preface; Roadmap/FAQs; Part 1. – Obtaining Location Information from Wireless Carriers; Part II: Mobile Tracking Devices; Part III: Telematics Providers (OnStar, etc.);[9] Appendix."[10] The *Vaughn* index describes the Federal

---

26(b)(3)(A)(ii). The qualified nature of the privilege, however, does not translate into the FOIA context. Exemption 5 "establish[es] a discrete category of exempt information," *FTC v. Grolier Inc.*, 462 U.S. 19, 27 (1983), and privileges materials not "normally" available to parties in litigation, *id.* at 26 (quoting *Sears*, 421 U.S. at 149). As a result, although a party to particular litigation may be able to overcome the privilege by showing need and hardship, "that does not remove the documents from the category of the *normally* privileged" which are protected by Exemption 5. *Id.* at 28.

[9] Telematics refers to telecommunications systems integrated into automobiles. These include "GPS navigation, integrated hands-free cellphones, wireless communications and automatic driving assistance systems. . . . General Motor's OnStar was the first to combine GPS with roadside assistance and remote diagnostics." *Definition of Telematics*, PC Magazine, http://www.pcmag.com/encyclopedia/term/52693/telematics (last visited December 28, 2017).

[10] As noted, DOJ released this Appendix in compliance with the district court's order. The Appendix itself is not in the appellate record. According to the *Vaughn* index, the Appendix included, for example, a

Narcotics Manual similarly: "Provides guidance to federal prosecutors/case agents re[garding] electronic surveillance and tracking devices. Text discusses electronic tracking devices- generally and cellular telephone location information."

Based on DOJ's descriptions, including in its briefing and argument before this court, and confirmed by our *in camera* review, we observe that both withheld sections of the USABook contain three distinct types of information: (1) technical information about electronic surveillance technologies, (2) considerations related to seeking court authorization for obtaining location information, and (3) legal background and arguments related to motions to suppress location information in later criminal prosecutions.

ii.

As to technical information, Cunningham explains that the "USABook . . . identifies factual information regarding specific types of investigative techniques employed in current and past criminal investigations." The Criminal Division's *Vaughn* index more specifically indicates that the document contains sections regarding obtaining location information from wireless carriers, mobile tracking devices, and telematics providers.

---

template for a model "affidavit in support of [an] application for authorization to obtain location data" concerning targeted cell phones; a model "sealed warrant in support of [an] application for authorization to obtain location data" from a targeted cell phone; form language for use in requesting future cell-site location information concerning targeted cell phones; and a model "application for an order authorizing the installation and use of a pen register and trap/trace device on a" targeted cell phone.

The technical information about electronic surveillance techniques contained in the USABook is not attorney work product. The function of such information is to inform investigators and prosecutors about available technologies that may be relevant to conducting a criminal investigation. Such technical information assists investigators in the conduct of their investigations. It does not include the "mental impressions, conclusions, opinions, or legal theories of a party's attorney" that were "prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3). Because this category of information is not attorney work product, it does not fall under Exemption 5 and must be disclosed.

iii.

The portions of the USABook documents that discuss ex parte applications for judicial approval of the use of particular surveillance techniques and methods present a closer question. Our *in camera* review confirms that these portions of the documents contain two distinct types of material: (1) instructions and guidance to federal investigators and prosecutors regarding the type of court authorization they can pursue to obtain particular types of electronic surveillance information and (2) legal arguments in support of this authorization.

Instructions to investigators on securing court authorization to obtain location information about a suspect, including the type of authorization required, are not attorney work product, as they can serve a non-adversarial purpose. Even if we view the portions of the USABook containing such instructions as serving both a non-litigation and a litigation purpose, recognizing that criminal investigations often do lead to prosecutions, the documents do not satisfy

this circuit's "because of" test for such so-called "dual purpose documents." *See In re Grand Jury Subpoena*, 357 F.3d at 907 (internal quotation marks omitted). When a document was not prepared exclusively for litigation, it "should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection . . . if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994)). A dual purpose document is considered "prepared or obtained because of the prospect of litigation" if it "would not have been created in substantially similar form but for the prospect of . . . litigation." *Id.* at 907–08 (internal quotations omitted) (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

The portions of the USABook that provide instructions to investigators regarding obtaining court authorization for electronic surveillance would have been created in "substantially similar form" regardless of whether those investigations ultimately lead to criminal prosecutions. *See id.* Of course, all criminal investigations can potentially lead to litigation, and the authorization necessary to obtain certain types of evidence is commonly disputed in the context of motions to suppress in criminal proceedings. But the fact that litigation *may* arise in which the legal sufficiency of the authorization to obtain evidence is disputed does not change the fact that the government must instruct its staff about how to conduct criminal investigations regardless of whether those investigations lead to later prosecutions.

Moreover, protecting DOJ's instructions to investigators and prosecutors about matters not prepared "because of" the prospect of litigation would not serve the core purpose of the attorney work-product privilege, which is "to encourage effective legal representation *within the framework of the adversary system* by removing counsel's fears that his thoughts and information will be invaded by his adversary." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978). The "focus on the integrity of the trial process is reflected in the specific limitation of the [work-product] privilege to materials 'prepared in anticipation of litigation or for trial.'" *Id.* (footnote omitted). "[M]aterials serving no cognizable adversarial function, such as policy manuals, generally would not constitute work product." *Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for United States Attorneys*, 844 F.3d 246, 255 (D.C. Cir. 2016).

In contrast, the portions of the USABook that present legal arguments supporting the agency's positions on the type of authorization necessary to obtain electronic information are attorney work product. These portions of the documents reflect the legal theories of DOJ's attorneys. They are included in the USABook to assist prosecutors faced with defending in court the government's position on the authorization necessary to obtain certain types of evidence. *See Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C. Cir. 1987) (holding that internal agency memoranda that "advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" are attorney work product properly withheld under Exemption 5 of FOIA). Although these issues may arise first in ex parte proceedings, similar legal issues recur at trial in the context of motions to suppress.

The ACLU argues that the general legal analyses contained in the USABook about court authorization for electronic surveillance are not exempt under FOIA as attorney work product because they are not directed at any particular case or claim. The ACLU posits that when the government acts to enforce the law as a prosecutor or investigator, FOIA's Exemption 5 protects only attorney work product developed in anticipation of a specific claim in a particular case.

We do not find this argument persuasive as a broad, inflexible proposition, though it has some force as one factor in assessing whether a particular document is work product and therefore within FOIA Exemption 5. We have never held, either within the FOIA context or in litigation generally, that attorney work product must be prepared in anticipation of specific litigation to be privileged, and we decline to do so here. Like attorneys preparing for a specific case, agency attorneys anticipating potentially recurring legal issues must be free to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510.

At the same time, not every document prepared by a DOJ attorney can be withheld on the basis that the agency may some day become involved in related litigation. The Department of Justice is, after all, charged with the enforcement of our criminal laws. In fulfilling that responsibility, agency attorneys almost always anticipate litigation in some general sense. As the D.C. Circuit has observed, "the prospect of future litigation touches virtually any object of a prosecutor's attention, and . . . the work product exemption, read over-broadly, could preclude almost all disclosure from an agency with substantial responsibilities

for law enforcement." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (internal citation and quotation marks omitted). So, in holding that the privilege protects detailed legal analysis regarding frequent litigating positions of a law enforcement agency, we do not suggest that any document prepared by a DOJ lawyer is privileged.

Our holding is consistent with the law of the D.C. Circuit. That court considered and rejected a specific-claim requirement in a similar context in *National Association of Criminal Defense Lawyers v. Department of Justice Executive Office for United States Attorneys*, 844 F.3d 246 (D.C. Cir. 2016). *National Association of Criminal Defense Lawyers* involved a request under FOIA to DOJ to release the Federal Criminal Discovery Blue Book, "a manual created by [DOJ] to guide federal prosecutors" in conducting discovery in criminal prosecutions. *Id.* at 249. Like the requested documents in this case, the Discovery Blue Book provides general guidelines to prosecutors, addresses recurring issues in criminal cases, and was not created for any specific case. Applying the same "because of" test that governs in this circuit, the D.C. Circuit determined that the Discovery Blue Book was prepared in anticipation of litigation, and so properly withheld under FOIA Exemption 5, because it provided practical, "how-to" advice regarding discovery during litigation. *Id*. at 251–52.

Like ACLU-NC here, the organization that submitted the FOIA request in *National Association of Criminal Defense Lawyers* argued that the Discovery Blue Book was not exempt under FOIA because it "was not prepared in anticipation of litigating a specific claim or case." *Id.* at 252. Interpreting its prior cases, the D.C. Circuit rejected that argument, holding that "there is no general, overarching

requirement that a governmental document can fall within the work-product privilege only if prepared in anticipation of litigating a specific claim." *Id.* at 253. The court concluded that because the Discovery Blue Book "is aimed directly for use in (and will inevitably be used in) litigating cases," "[i]ts disclosure . . . risks revealing DOJ's litigation strategies and legal theories regardless of whether it was prepared with a specific claim in mind." *Id.* at 254.

At the same time, the D.C. Circuit recognized that in some circumstances "the existence (or non-existence) of a specific claim [is] salient . . . as a means of identifying whether documents ha[ve] been prepared at a time when litigation was sufficiently in mind" to warrant work-product protection. *Id.* at 255. We agree with that caveat as well. Without it, routine DOJ communications to its many staff attorneys concerning new legal developments—essentially, continuing legal education messages—would become work product, immune from both civil discovery and FOIA disclosure. But even with that substantial caveat regarding generic legal material, we conclude that the sections of the USABook that detail DOJ's developed legal arguments regarding the process of obtaining court authorization for certain forms of location data fall within Exemption 5.

iv.

As to portions of the USABook that contain legal background and analyses concerning suppression motions: Material that simply lists relevant case law and recites case holdings is not protected by the attorney work-product privilege or Exemption 5. These sections provide objective descriptions of cases and so more closely resemble continuing legal education resources for DOJ attorneys than attorney

work product. Unless a given portion of the document here at issue contains some original analysis—particularized arguments, strategies, or tactics generated in anticipation of litigation, even if not for a particular claim—it cannot claim the protection of Exemption 5.

In contrast, the portions of the USABook that contain legal analyses and specific arguments that DOJ attorneys can make in response to suppression motions are attorney work product, and so are covered by Exemption 5. Like the sections presenting legal arguments regarding the necessary authorization for certain investigative techniques, these sections reflect the drafting attorney's mental impressions and analysis and were prepared in anticipation of recurring challenges in litigation. For the reasons discussed above, no specific claim is necessary for such legal analyses to sufficiently anticipate litigation and thus warrant attorney work-product protection.

v.

The district court held the Criminal Division documents not to be attorney work product at all. We remand for the district court to conduct a segregability analysis in accordance with this opinion. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."). Further briefing from the parties and *in camera* review by the district court could aid in that process.

We recognize that the work-product privilege "shields both opinion and factual work product from discovery" and that ordinarily "if a document is covered by the attorney

work-product privilege, the government need not segregate and disclose its factual contents." *Pacific Fisheries*, 539 F.3d at 1148; *accord Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) (holding that when documents constitute attorney work product "the entire contents of the[] documents—*i.e.*, facts, law, opinions, and analysis—are exempt from disclosure under FOIA"). By contrast, where only *portions* of the documents are covered by the privilege, the non-exempt parts may be appropriately segregated and disclosed. *Compare Nat'l Ass'n of Criminal Def. Lawyers*, 844 F.3d at 257 ("[T]here may . . . be cases in which a record containing some amount of work product also contains . . . segregable, non-exempt material subject to disclosure."), *with Judicial Watch*, 432 F.3d at 370 ("Each of the nine documents, in its entirety, is work product. There are no non-work product parts of the emails. In other words, there are no segregable parts.").

Here, the requested excerpts of the USABook only partially consist of work product exempt from disclosure. As discussed above, the sections of the document specifically addressing legal arguments relating to surveillance authorization, or considerations and strategies for litigating suppression motions, are shielded from disclosure. But substantial portions of the USABook contain technical information and general resources for staff attorneys concerning legal developments. Unlike the sections that specifically address legal arguments, these sections are not attorney work product.

The segregable sections of these documents are therefore quite unlike factual material intertwined with legal analysis in a document prepared by an attorney in anticipation of litigating a specific case. *See, e.g.*, *Judicial Watch*, 432 F.3d

at 367–68, 370 (holding each of the nine disputed emails about a possible DOJ amicus filing in a particular case was, in its entirety, non-segregable work product).  Where the requested document is generic, pertaining to a broad class of future cases, it should generally be easier to separate material that is exempt from material that is non-exempt.  In documents created for specific litigation, in contrast, non-exempt material may be so closely intertwined with information pertaining to the specific case that the two categories of material cannot be easily separated.

In *National Association of Criminal Defense Lawyers*, for instance, the D.C. Circuit remanded to the district court to assess whether there were "logically divisible sections" of non-exempt material in the 500-page discovery manual for U.S. Attorneys (the Discovery Blue Book) that could be reasonably segregated.  844 F.3d at 257 (instructing the district court to see whether "nonexempt statements of policy" were segregable from non-exempt material). Because the Discovery Blue Book was not prepared for a specific lawsuit but rather as a generic resource for all future litigation, it was possible for some portions—but not others—to be prepared in anticipation of litigation and thus exempt from disclosure.

So too here; the USABook is a generic resource rather than a case-specific work product, and the portions of it not prepared in anticipation of litigation may be segregable from those that were.  Consistent with our discussion in Part II.A.iv *supra*, broad recitations of case holdings and summaries of applicable law, if segregable, must be disclosed.  Only analytic portions bearing upon, and prepared in advance of, litigation are exempt.

Our holding is consistent with the principle that "[t]he focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Accordingly, we order the segregation of the portions of the USABook sections that are not exempt as attorney work product.

vi.

The ACLU-NC argues that even if the withheld portions of the USABook are attorney work product, they must be disclosed because they constitute DOJ's "working law."

The Supreme Court has recognized a "working law" exception to Exemption 5. The exception has been applied only to documents that would otherwise be exempt under the deliberative process privilege, which DOJ does not invoke here. And the premises underlying the working law exception have no application in the attorney work-product context.

The deliberative process privilege protects the internal decision making processes of government agencies, including "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Sears*, 421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)). The working law exception places a boundary on the deliberative process privilege, requiring disclosure of "opinions and interpretations which embody the agency's effective law and policy" and "have the force and effect of law." *Id.* at 153

(internal quotations omitted). The distinction rests on the consideration that "the public is vitally concerned with the reasons which . . . suppl[ied] the basis for an agency policy actually adopted," *id*. at 152, and is consistent with the "strong congressional aversion to secret agency law" reflected in FOIA. *Id.* at 153 (internal quotations and alterations omitted) (citing Davis, *The Information Act: A Preliminary Analysis*, 34 U. Chi. L. Rev. 761, 797 (1967)). The requirement that an agency's working law be disclosed is in essence an extension of FOIA's affirmative requirement that agencies index and make available to the public "final opinions . . . made in the adjudication of cases" and "statements of policy and interpretations which have been adopted by the agency." 5 U.S.C. § 552(a)(2).

No similar rationale justifies extending the working law exception to the attorney work-product privilege as incorporated in Exemption 5. Moreover, the Supreme Court has held that any final agency opinion or policy interpretation "subject to the affirmative disclosure requirement of § 552(a)(2) [i]s nevertheless shielded from disclosure under Exemption 5 [if] it contain[s] a privileged attorney's work product." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 n.23 (1979) (citing *Sears*, 421 U.S. at 160). We agree with the D.C. Circuit that the same rule extends to working law, and that an agency therefore "need not segregate and release agency working law from [documents] withheld in their entirety pursuant to the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002) (affirming and adopting the reasoning of *Tax Analysts v. IRS*, 152 F. Supp. 2d 1, 18–25 (D.D.C. 2001), which held that, under *Merrill*, "as long as . . . documents . . . were prepared in anticipation of litigation or

for trial, they can be withheld, including any agency working law that they may contain").

vii.

Finally, we note that DOJ has frequently and recently litigated questions regarding the type of court authorization necessary to obtain various types of electronic surveillance information, both in the context of ex parte government applications for court authorization and motions to suppress location evidence at trial. *See, e.g.*, *United States v. Carpenter*, 819 F.3d 880, 883 (6th Cir. 2016), *cert. granted*, 137 S. Ct. 2211 (U.S. June 5, 2017) (No. 16-402) (reviewing denial of motion to suppress cell-site data obtained from a service provider pursuant to a court order under the Stored Communications Act, 18 U.S.C. § 2703(d)); *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 305 (3d Cir. 2010) (government application pursuant to 18 U.S.C. § 2703(d) for a court order compelling a cellular phone provider to provide historical cellular tower data). The Tracking Devices manual was drafted in August 2009 and was last revised in 2011. Because of the age of the documents, DOJ may have presented the legal positions and arguments contained in those internal documents in court filings.

"[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). Accordingly, the district court on remand should determine whether DOJ has officially acknowledged and publicly disclosed the litigating positions reflected in the withheld portions of the USABook. To the

extent DOJ has made its litigating positions public, the purposes of Exemption 5 would not be served by withholding documents recommending those positions. "The 'logic of FOIA' postulates that an exemption can serve no purpose once information . . . becomes public." *Id.* at 555 (quoting *Niagra Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)).

### B.

Because we hold that some portions of the USABook are not exempt as attorney work product under Exemption 5, we now address DOJ's argument that the documents also fall within the scope of Exemption 7(E).

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records of information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The statutory requirement that the government show that disclosure "could reasonably be expected to risk circumvention of the law" applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures. *Hamdan*, 797 F.3d at 778 (citing *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010)). The documents at issue here contain both descriptions of "techniques and procedures" and "guidelines for law enforcement investigations or procedures," so we consider both categories.

"Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). If an agency record discusses "the application of [a publicly known technique] to . . . particular facts," the document is not exempt under 7(E). *Id.* But if a record describes a "specific *means* . . . rather than an application" of deploying a particular investigative technique, the record is exempt from disclosure under FOIA. *Hamdan*, 797 F.3d at 777–78. Likewise, records that provide a "detailed, technical analysis of the techniques and procedures used to conduct law enforcement investigations" may properly be withheld under Exemption 7(E). *Bowen v. FDA*, 925 F.2d 1225, 1228–29 (9th Cir. 1991).

Applying these standards, we held in *Hamdan* that the Federal Bureau of Investigation (FBI) properly withheld agency records that described specific means of carrying out surveillance and conducting credit searches, even though those general techniques are well known to the public. *Hamdan*, 797 F.3d at 777–78. The documents were exempt, we reasoned, because they revealed specific information about law enforcement methods of locating and apprehending suspects not publicly known and, if revealed, would compromise the ability of the FBI to use those techniques. *Id.* at 778. We similarly held in *Bowen v. FDA* that details about how law enforcement agents trace cyanide tampering could properly be withheld under Exemption 7(E), even though general information about tracing as an investigative method was known to the public. 925 F.2d at 1229. In contrast, we held in *Rosenfeld* that records disclosing the use of a particular individual's identity to make a pretext phone call merely described the application of a generally known

investigative technique and so were not subject to Exemption 7(E). 57 F.3d at 815.

In this case, the DOJ Criminal Division maintains that the withheld portions of the USABook "discuss such non-public details as where, when, how, and under what circumstances electronic surveillance, tracking devices and non-wiretap electronic surveillance investigative techniques are used," information which "could provide individuals with information that would allow them to violate the law while evading detection by federal law enforcement." We cannot agree with the government as to Exemption 7(E).

The contested documents describe generally methods for using various technologies to obtain a suspect's location information, including from wireless carriers, mobile tracking devices, vehicle telematics systems, and Internet Protocol (IP) addresses. These are all publicly known investigative techniques. The documents provide basic technical information about each surveillance method, describe the legal authorization necessary for obtaining location information, and describe legal arguments related to that acquisition. But, as our review of the documents confirms, they lack any "detailed, technical analysis" of these investigatory techniques. *See Bowen*, 925 F.2d at 1228. Although we must "give considerable deference to agency affidavits made in apparent good faith," *Hamdan*, 797 F.3d at 772, based on our *in camera* review we conclude that the documents do not contain non-public details regarding the use of these surveillance techniques. Accordingly, unlike in *Hamdan* and *Bowen*, the withheld documents in this case do not reveal details or means of deploying law enforcement techniques that would bring them within the ambit of Exemption 7(E).

The documents also constitute "guidelines for law enforcement investigations and prosecutions" in that they provide instructions to investigators and prosecutors regarding how to lawfully obtain electronic location information.  Such guidelines are only protected by Exemption 7(E) if their disclosure would present a risk of circumvention of legitimate government surveillance, and the law, by wrongdoers.  *See* 5 U.S.C. § 552(b)(7)(E).  These documents do not present such a risk.  Apart from providing publicly known, basic technical information about surveillance techniques, the two disputed sections of the USABook guide prosecutors on the legal steps necessary to use such techniques in their investigations and prosecutions.  Such information about how the government obtains authorization to collect that information and how it defends its collection in later litigation may be of use to a lawyer litigating against the agency, but it provides no relevant information that would assist criminals in conforming their behavior to evade detection or circumvent the law.  As disclosure of the guidelines cannot reasonably be expected to risk circumvention of the law, the guidelines are not exempt under 7(E).

### III.  Conclusion

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the decision of the district court and **REMAND** for further proceedings consistent with this opinion.